# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN S. GARCIA, | CV F   02-5878 AWI DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS AND ORDER DENYING PETITIONER'S REQUEST FOR DISCOVERY |
| v. | |
| A.P. KANE, | [Docs. 1, 50] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

PROCEDURAL HISTORY[2]

On October 2, 1996, in the Kern County Superior Court following a jury trial, Petitioner was found guilty of felony possession of cocaine (California Health & Safety Code § 11350(a)) and two misdemeanors: being under the influence of cocaine (California Health & Safety Code § 11550(a)), and possession of a controlled substance paraphernalia (California Health & Safety Code § 11364). The jury further found that Petitioner had suffered five prior serious or violent

---

[1] In his answer, Respondent's counsel asserts that Jim Hamlet is no longer the Warden at the Correctional Training Facility in Soledad, California. The acting Warden is currently A.P. Kane, therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Warden Kane is substituted in place of former Warden Hamlet.

[2] The majority of the procedural history is taken directly from Respondent's answer filed August 9, 2005, as it correctly sets forth the procedural background in this case.

1

felony convictions within the meaning of California's Three Strikes law (California Penal Code[3] §§ 1170.12, 667(b)-(I)): two first degree burglaries (§ 460.1), two first degree robberies (§ 212.5(a)), and one second degree robbery (§ 212.5(b)).  In addition, the jury found that Petitioner had served three prior prison terms within the meaning of § 667.5(b).  The court exercised its discretion to strike two of the prior felony convictions and sentenced Petitioner to 26 years to life, and a concurrent six month sentence for his two misdemeanor convictions.  (Lodged Doc. No. 1, CT at 260-62; Lodged Doc. No. 2, RT dated 12/6/1996, at 22.)[4]

Petitioner filed a notice of appeal to the California Court of Appeal for the Fifth Appellate District.  On January 8, 1999, the Fifth District affirmed the conviction and sentence in a reasoned decision dated January 8, 1999.  (Court Doc. 25, Respondent's Motion to Dismiss, Exh. B.)

Petitioner did not file a petition for review in the California Supreme Court.

On August 25, 1999, Petitioner filed a habeas corpus petition in the California Superior Court, County of Kern.  (Respondent's Motion to Dismiss, Exh. C.)  The petition was denied on September 23, 1999.  (Id. at Exh. D.)

On September 30, 1999, Petitioner filed a habeas corpus petition in the California Court of Appeal, Fifth Appellate District.  (Id. at Exh. E.)  The petition was denied without comment on October 8, 1999.  (Id. at Exh. F.)

On December 12, 2001, Petitioner filed a habeas corpus petition in the California Supreme Court.  (Lodged Doc. No. 6.)  The petition was denied without comment on May 15, 2002.  (Id. at Exh. H.)

On July 22, 2002, Petitioner filed the instant federal petition for writ of habeas corpus.  (Court Doc. 1.)

On December 13, 2002, the district court adopted a recommendation by the Court that Ground Three asserting a denial of access to the courts be dismissed.  (Court Doc. 16.)

---

[3] All further statutory references are to the California Penal Code unless others indicated.

[4] "CT" refers to Clerk's Transcript on Appeal and "RT" refers to Reporter's Transcript on Appeal.

On March 13, 2003, Respondent filed a motion to dismiss the petition for violating the one-year statute of limitations. (Court Doc. 25.)

On July 21, 2003, the Court recommended that Respondent's motion be denied, relying on the Ninth Circuit Court of Appeals opinion in <u>Welch v. Newland</u>, 267 F.3d 1013 (9th Cir. 2001). (Court Doc. 27.)

On October 30, 2003, the district court stayed the action because the Ninth Circuit decided to rehear <u>Welch v. Newland</u>, 267 F.3d 1013.

On February 4, 2004, following the decision in <u>Welch v. Carey</u>, 350 F.3d 1079 (9th Cir. 2003) (en banc), the district court lifted the stay on the action and stated that it was adopting in full the Court's recommendation and granting Respondent's motion to dismiss[5]. (Court Doc. 33.)

On June 8, 2004, the Ninth Circuit granted a certificate of appealability and ordered Respondent to show cause why the judgment should not be summarily vacated and the matter remanded for a ruling on whether Petitioner was entitled to equitable tolling. (Ninth Cir. Case No. 04-15606.)

On July 2, 2004, Respondent submitted a non-opposition to remanding the case for a determination of whether Petitioner was entitled to equitable tolling. (<u>Id</u>.)

On July 16, 2004, the Ninth Circuit Court of Appeals vacated and remanded the case "to the district court so that it may address petitioner's claims regarding equitable tolling." (<u>Id</u>.)

On April 11, 2005, the district court issued an order vacating its judgment dismissing the action, thus, concluding that the action was timely filed. (Court Doc. 49.) The order directed Respondent to file an answer and referred the matter back to the undersigned for a recommendation. (<u>Id</u>.)

On May 26, 2005, Petitioner filed a motion for discovery. (Court Doc. 50.)

On August 9, 2005, Respondent filed an answer to the petition, and on August 10, 2005,

---

[5] Note, however, the Court's recommendation had been to *deny* Respondent's motion to dismiss.

1  Respondent filed a motion for reconsideration of the Court's April 11, 2005, order denying
2  Respondent's motion to dismiss. (Court Docs. 54, 55.)
3      On September 8, 2005, Petitioner filed a response to Respondent's motion for
4  reconsideration, and on September 22, 2005, Petitioner filed a traverse.[6] (Court Docs. 60, 64.)
5  On November 18, 2005, Respondent filed a request to withdraw its motion for reconsideration,
6  filed August 10, 2005. On December 6, 2005, the Court granted Respondent's request to
7  withdraw its reconsideration motion.[7]
8      On March 3, 2006, the Court issued an order directing Respondent to file a response to
9  Petitioner's May 26, 2005, discovery request. (Court Doc. 75.)
10     Respondent filed a response on March 30, 2006. (Court Doc. 78.)
11     On May 12, 2006, the Court directed Respondent to submit supplemental briefing
12 addressing Petitioner's claim that appellate counsel was ineffective for failing to challenge the
13 validity of Petitioner's prior convictions on direct appeal. (Court Doc. 79.) After the grant of an
14 extension of time, Respondent filed supplemental briefing on July 20, 2006, and Petitioner filed
15 an opposition on August 18, 2006. (Court Docs. 82, 83.)

## STATEMENT OF FACTS[8]

> [Petitioner] does not contest the sufficiency of the evidence to support the judgment. [Citations.] On an appeal this court must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.] Viewed in that light, the facts presented at trial were as follows.
> On June 9, 1996, while in uniform and on patrol, Kern County Deputy Sheriff Kerry Savee responded to a call at a residence in Bakersfield. At the house, he was approached by Emily Knox-Taylor who stated that her son, [Petitioner], was under the influence and was in the back yard with her other son, Salvador Garcia.
> Deputy Savee walked around the house into the back yard where he

---

[6] On October 7, 2005, Petitioner filed a request to submit late evidence in support of his request for equitable tolling. (Court Doc. 66.)

[7] Because Respondent withdrew its motion for reconsideration of whether the instant petition is timely, the Court disregards the portion of Respondent's answer that seeks dismissal based on untimeliness grounds.

[8] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District appearing as Exhibit B, of Court Doc. 25, Respondent's Motion to Dismiss, at 3-6. The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

4

observed [Petitioner] standing still and upright facing his brother. Knox-Taylor stated she was placing [Petitioner] under arrest for being under the influence. Garcia then stuck his hands into [Petitioner's] front pants pocket and began removing items and placing them on the ground at [Petitioner's] feet. Deputy Savee instructed Garcia to stop and he complied. The deputy then approached [Petitioner] and asked him whether he used drugs. [Petitioner] replied in the negative and Deputy Savee conducted a rapid eye test to determine whether [Petitioner] was under the influence of drugs. [Petitioner] had a tense expression on his face, his lips were chapped and scapped and his pupils were dilated and slow to respond to light. [Petitioner] was talking a lot, but not rapidly.

    Garcia then told Deputy Savee that the family was concerned about [Petitioner's] drug usage and wanted to get help for [Petitioner]. The deputy suggested a drug rehabilitation center or notification of [Petitioner's] parole agent. Knox-Taylor continued to insist that [Petitioner] be arrested and Garcia explained that [Petitioner] was a "Three Strikes" subject who had numerous arrests and a prison sentence and that the family was concerned that if he was not arrested he would commit another robbery to obtain money for drugs. Deputy Savee stated he felt [Petitioner] was not under the influence to the extent he should be arrested and suggested numerous alternatives to arrest. He then walked back to where [Petitioner] was standing and looked at the items lying on the ground near [Petitioner's] feet. He observed what he believed, based on his training and experience, to be a pipe used for ingesting crack cocaine.

    Deputy Savee seized the pipe and arrested [Petitioner] for possession of a device used for ingesting a controlled substance and for being under the influence, based on Knox-Taylor's citizen's arrest. Deputy Savee was also of the opinion that [Petitioner] had recently used a central nervous system stimulant but that [Petitioner] was on the lower end of the scale as far as being under the influence.

    Deputy Savee took [Petitioner] to the jail facility to be booked. There, he administered additional diagnostic exams to determine whether [Petitioner] was under the influence. While [Petitioner] did not perform poorly on all of the examinations, his total performance led Deputy Savee to conclude that [Petitioner] was under the influence of a central nervous system stimulant but on the low end of the spectrum. [Petitioner] also submitted a blood sample.

    Deputy Savee conducted a pre-booking search of [Petitioner] and located a plastic lighter, some aspirin and three small rocks of what he believed was rock cocaine. These items were located in [Petitioner's] right front pants pocket; the cocaine was loose in [Petitioner'] pocket. Deputy Savee considered this unusual, but not unheard of. From the wastebasket, Deputy Savee retrieved the plastic sleeve from a urine analysis kit he had just opened. He placed the three rocks into the plastic and placed the plastic into his shirt pocket. He later placed the plastic into a Kapac bag, sealed it, photocopied the bag, and placed the Kapac bag into an envelope to be sent to the crime lab for analysis.

    Kern County Criminalist David Diosi examined the substance found in [Petitioner's] pocket and determined that it was .13 grams of a substance containing cocaine and that the quantity constituted a useable amount.

    Kern County Criminalist Bernadetta Rickard tested the blood sample taken from [Petitioner] and determined that cocaine was present in the blood at a level of .19 micrograms per million, a level considered to be strong. Rickard stated that based on the way cocaine breaks down in the body, this amount indicated that the cocaine had been ingested no more than two days before the blood sample was taken, but she was unable to make an estimate of the most recent time the cocaine could have been ingested.

    The prosecution introduced into evidence a Department of Corrections section 969(b) packet and [Petitioner's] booking records on the instant matter for purposes of proving the prior felony conviction and prior prison term allegations.

> The evidence of [Petitioner's] five prior felony convictions and prior prison terms was undisputed.
> [Petitioner's] unsuccessful defenses were (1) the rocks of cocaine were planted by the deputies, and [Petitioner] never actually possessed them, (2) the crack pipe was planted by the deputies, and (3) the scientific testing of [Petitioner's] blood and of the cocaine may have been flawed.  As to this third defense theory, however, no defense experts were called.  The only defense witnesses were [Petitioner's] mother and [Petitioner's] brother. [Petitioner's] mother testified that [Petitioner] "was using" and that she told the officers "that he was on parole and that he had two strikes and that we wanted to do everything that we could to save him so anything didn't happen to him . . . ." [Petitioner's] brother, Salvador, told Deputy Savee that [Petitioner] "had strikes and what we were trying to prevent was any type of further strikes because everybody is well aware of much televised law three strikes, you are out."  Salvador said that he had personally searched [Petitioner] and that he had found no crack pipe and no small white chunky substances on [Petitioner].  The court allowed witnesses to talk about "strikes" because "strikes" were mentioned in the conversations with Deputy Savee.  Deputy Savee himself testified that Salvador had told him [Petitioner] "was a three strikes subject" and that Salvador "was concerned that the defendant would go out and commit another robbery so no mention of "the issue of penalties that may or may not be imposed in the course of this particular trial."  Part of the unsuccessful defense strategy appears to have been for [Petitioner's] mother and brother to mention that [Petitioner] had "strikes" and to hope that the jury might then acquit him of the cocaine possession charge out of a merciful concern about the length of the sentence [Petitioner] might receive if he were to be convicted.
> Other evidentiary and procedural facts pertinent to this appeal will be discussed below in connection with the respective issues to which those facts pertain. . . .

(Court Doc. 25, Respondent's Motion to Dismiss, Exh. B, Opinion, at 3-7.)

## DISCUSSION

A.  <u>Jurisdiction</u>

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; <u>Jeffries v. Wood</u>, 114

F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.      Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual

findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

The court looks to the last reasoned state court decision as to the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)). Where, as here, the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

C.     Ineffective Assistance of Appellate Counsel

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to Strickland's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); See also Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, she would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998). The presumption of reasonableness is even stronger for appellate counsel because he

has wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized as one of the hallmarks of effective appellate assistance. Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir.1989). Appealing every arguable issue would do disservice to the Petitioner because it would draw an appellate judge's attention away from stronger issues and reduce appellate counsel's credibility before the appellate court. Id. Appellate counsel has no constitutional duty to raise every nonfrivolous issue requested by petitioner. Id at 1434 n10 (*citing* Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308 (1983)).

### 1. Failure to Raise Argument Regarding Proof of Prior Convictions

In Ground One, Petitioner contends that his appellate counsel was ineffective because she "failed to raise any viable issues regarding the pleading and proving of Petitioner's strikes from his (Romero) strike hearing that was held in the superior court." (Petition, at 4-5, ¶ 12(a).) This ground for relief was raised in the habeas corpus petition submitted to the California Supreme Court and was rejected without comment.[9] (Lodged Item. No. 6; Respondent's Motion to Dismiss, Exhibits G & H.)

As previously stated, on May 26, 2005, Petitioner filed a motion for discovery. (Court Doc. 50.) On February 1, 2006, the Court directed Petitioner to submit further briefing on the motion for discovery. (Court Doc. 72.) The Court's order explained that the motion for discovery was unclear and Petitioner needed to explain what evidence he was seeking, who he believes has the evidence, and what claims the evidence relates. (Id.)

On February 23, 2006, Petitioner filed a response to the Court's order. (Court Doc. 74.) On March 3, 2006, the Court directed Respondent to file a response to Petitioner's request. (Court Doc. 75.) Respondent submitted an opposition on March 30, 2006. (Court Doc. 78.)

As Respondent correctly sets forth in his opposition, Petitioner requests the following documentation:

---

[9] The court looks to the last reasoned state court decision as to the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)). Where, as here, the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

   1) Reporter's transcripts of the plea colloquies from two separate burglary convictions he suffered in 1988 (nos. 37136 and 37225) and one robbery conviction from 1990 (no. 41584), as well as any written waivers of rights signed by Petitioner related to these prior convictions from 1988 and 1990;
   2) Reports from probation officers relating to the aforementioned burglary and robbery convictions from 1988 and 1990;
   3) Existing police reports;
   4) Any and all documentation relating to the aforementioned burglary and robbery convictions from 1988 and 1990 "for the purposes of analyzing the constitutional validity of the prior convictions"; . . . [and]
   5) Evidence from Petitioner's 1996 case (no. 67178) in the form of motions, declarations, and memoranda of points and authorities "that challenged the constitutional validity of the 1988 and 1999 prior convictions based on the available reporter's transcripts, probation reports, police reports, and attorney's and investigators [sic] reports in those cases."

(Court Doc. 74; Petitioner's Response to Order for Further Briefing, at 4-5.)

  At trial, by way of a motion to strike the five prior convictions, Petitioner challenged the 1988 convictions for two separate counts of residential burglary on the ground that he was not fully advised of his constitutional rights and ineffective assistance of trial counsel. Petitioner challenged the 1990 conviction of robbery on the ground of ineffective assistance of counsel for failing to pursue a mental incompetency defense. (See Lodged Doc. 2, RT of 10/31/96 & 11/22/96, hearings.)

  As Respondent submits, the explanations of Ground One in Petitioner's discovery request differ from the allegation in the petition, and as Respondent correctly argues, part of the claim is barred by Lackawanna County v. Coss, 532 U.S. 394 (2001). In Lackawanna, the Supreme Court held that once a prior state conviction is no longer open to direct or collateral attack in its own right, a defendant "may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained," unless the petitioner was denied counsel in the prior proceeding. Id. at 404.[10] Thus, to the extent the Court construes Petitioner's allegation in his petition to include a direct challenge to the validity of his prior convictions, as set forth in his discovery request, it is not cognizable and is therefore without merit.

---

[10] Justice O'Connor, writing for a plurality of the Court did note an additional exception where "there may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own." Id. at 405.

1  This does not resolve Petitioner's claim that appellate counsel was ineffective for failing
2 to challenge the validity of the prior convictions on direct appeal.  Nonetheless, Petitioner's
3 claim fails under Strickland.  Even if this Court assumed that appellate counsel was ineffective,
4 Petitioner has not shown any prejudice by counsel's ineffectiveness.  See Strickland, 466 U.S. at
5 697 (a court need not determine whether counsel's performance was deficient before examining
6 the prejudice suffered by the petitioner as a result of the alleged deficiencies).  Petitioner was
7 able to, and did raise, the instant claim that appellate counsel was ineffective for failing to
8 challenge the validity of the prior convictions on direct appeal by way of a state petition for writ
9 of habeas corpus.  (Respondent's Motion to Dismiss, Exh. G.)  The California Supreme Court
10 denied the petition without comment.  (Id., Exh. H.)  Accordingly, Petitioner has not, and cannot,
11 demonstrate any resulting prejudice from appellate counsel's alleged ineffectiveness in failing to
12 raise this claim, as Petitioner adequately raised the claim to the California Supreme Court.[11]  As
13 shown by the post-conviction court's denial of this claim, Petitioner would have fared no better
14 had this claim been raised earlier in his direct appeal.  Thus, Petitioner has already received any
15 relief this Court could grant him on this claim, that is review before the state's highest court, and
16 Petitioner could not have been prejudiced.  This finding renders Petitioner's request for discovery
17 moot and unnecessary.

18       2.      <u>Failure to File Petition For Review And/Or Advise of Deadline</u>

19  In Ground Two, Petitioner contends that appellate counsel was ineffective because she
20 failed to file a petition for review, or advise Petitioner of the deadline for filing a petition for
21 review.  (Petition, at 5, ¶ 12(b).)  As with Ground One, this claim was raised in the habeas corpus
22 petition submitted to the California Supreme Court, and was rejected without comment.  (Lodged
23 Item No. 6, Respondent's Motion to Dismiss, Exh. H.)
24  Because the right to counsel extends only to the first appeal of right, counsel was and
25 could not have been ineffective, as review by that court is discretionary, to which no right to

---

[11] This is so because if this Court determined, after reviewing the merits of Petitioner's underlying constitutional challenges to the prior conviction, that there was merit to Petitioner's claim that appellate counsel should have raised a challenge to the constitutional validity of the prior convictions on direct appeal, the only remedy this Court could grant would be review by the state court.

11

counsel attaches. Ross v. Moffit, 417 U.S. 600, 610, 619 (1974); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Accordingly, Petitioner was not deprived of the right to effective assistance of counsel. Wainwright v. Torna, 455 U.S. 586, 587 (1982) (per curiam) (holding that since the petitioner had no constitutional right to counsel to pursue discretionary review by the Florida Supreme Court, he was not deprived of effective assistance of counsel when his counsel failed to timely file the application for discretionary review). Assuming that appellate counsel did not notify Petitioner of the deadline for requesting discretionary review, Petitioner had no constitutional right to such advice. Further, as Respondent submits, there is no showing that Petitioner reasonably relied on appellate counsel to advise him of this deadline. In any event, as stated above, Petitioner timely filed a petition for writ of habeas corpus to the California Supreme Court raising the claim that appellate counsel was ineffective. Based on the foregoing, the state courts' rejection of this claim was not unreasonable and Petitioner is not entitled to habeas relief.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED;

2. Petitioner's request for discovery be DENIED as MOOT; and

3. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the

///

///

///

1 objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
2 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time
3 may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th
4 Cir. 1991).

   IT IS SO ORDERED.

   **Dated:  October 19, 2006**             /s/ *Dennis L. Beck*
   3b142a                                   UNITED STATES MAGISTRATE JUDGE